# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

LAMARTICE WRIGHT,

           Petitioner,

v.

KYLE OLSEN,[1] et al.,

           Respondents.

Case No. 2:18-cv-02136-RCJ-VCF

**ORDER DENYING PETITION ON THE MERITS**

    Petitioner Lamartice Wright, who was found guilty in Nevada state court of conspiracy to commit robbery, robbery with the use of a deadly weapon, battery with the use of a deadly weapon, and battery with the intent to commit a crime, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (*See* ECF Nos. 24; 30-2.) This matter is before this court for adjudication of the merits of the remaining[2] ground in Wright's first amended petition, which alleges that Wright's trial counsel failed to convey a favorable plea offer from the prosecution. (ECF No. 24.) For the reasons discussed below, this court denies the petition and a certificate of appealability.

---

[1] The state corrections department's inmate locator page states that Wright is incarcerated at Northern Nevada Correctional Center. Kyle Olsen is the current warden for that facility. At the end of this order, this court directs the clerk to substitute Kyle Olsen as a respondent for Respondent Brian Williams. *See* Fed. R. Civ. P. 25(d).

[2] This court previously determined that grounds 2 and 3 were unexhausted. (ECF No. 44.) And following Wright's motion for partial dismissal, this court dismissed grounds 2 and 3. (ECF No. 47.)

I.      BACKGROUND[3]

Brinton Duck testified that he got off work at 3:00 a.m. on December 6, 2010, and went to a bar inside the Wildfire Casino in Las Vegas, Nevada. (ECF No. 29-21 at 17–18.) While sitting at the bar, Duck was approached by two women. (*Id.* at 19.) After talking with the women for a while, they invited Duck to return to their residence. (*Id.* at 20.) Duck walked the women to their car in the parking lot, returned to the bar, waited for the women to call him, and then walked to his car and followed their directions to their apartment complex. (*Id.* at 20–23.)

Duck arrived at the apartment complex, and after parking his car in a spot that the women designated, the women got into the backseats of Duck's car. (*Id.* at 23–24.) Duck asked the women about going to their apartment, but "right then [his] car door open[ed] and a gun [was] put . . . to [his] head." (*Id.* at 24.) A man, later identified as Wright, demanded that Duck give him his money. (*Id.* at 25–26.) Wright "pistol-whipped" Duck in the face, and Duck started bleeding. (*Id.* at 27.) While Duck was covering his face to contain the blood, Wright reached into Duck's pockets and took some money, identification cards, cell phone, marijuana, and a pipe. (*Id.*) Another man was standing behind Wright during this encounter. (*Id.* at 28.) The two men and two women left the scene. (*Id.* at 29.) Duck later identified Wright from a photo lineup. (*Id.* at 36.)

Nikita Tate, Wright's girlfriend at the time of the incident, testified that on December 6, 2010, while she waited in a car, Wright entered the Wildfire Casino and came out a little while later. (ECF No. 29-21 at 136, 145.) Wright told Tate, "[t]here's a guy sitting at the bar that's drunk and he has a lot of money and you know what to do; do the right thing." (*Id.* at 145.) Tate took

---

[3]This court makes no credibility findings or other factual findings regarding the truth or falsity of the evidence from the state court. This court's summary is merely a backdrop to its consideration of the issues presented in the case.

2

Wright's instructions to mean that Wright wanted her to "sweet talk him out of the bar, to get him to come out." (*Id.* at 146.)

Tate and her friend Jevonna Pollins, who had been in the car with Tate in the parking lot of the Wildfire Casino, entered the casino with Wright, and Wright told them to "get the guy to exchange numbers so [they could] meet him back at the house." (*Id.*) Tate and Pollins sat next to Duck and started gambling, smoking cigarettes, and "engaging in like sexual conversation" with Duck. (*Id.* at 147.) Tate and Pollins spoke with Duck for "about 30 minutes," and Pollins eventually exchanged phone numbers with Duck. (*Id.* at 148.) As Tate and Pollins were leaving the casino, Tate called Wright, and Wright told Tate to pick him and his cousin up on the other side of the casino. (*Id.* at 149.) Tate, Pollins, Wright, and Wright's cousin went home, and after Pollins spoke with Duck on the phone a few times, Tate and Pollins went to the apartment complex's parking lot to meet Duck. (*Id.* at 149–152.) Tate and Pollins got into the backseat of Duck's car, and after Wright opened Duck's driver-side door, Tate and Pollins "ran out of the car and back to the house." (*Id.* at 152–54.) Wright and his cousin entered the residence approximately two minutes later carrying Duck's property. (*Id.* at 155.)

The jury found Wright guilty of conspiracy to commit robbery, robbery with the use of a deadly weapon, battery with use of a deadly weapon, and battery with intent to commit a crime. (ECF No. 29-26.) Wright appealed, and the Nevada Supreme Court affirmed. (ECF No. 30-20.) Wright then filed a *pro se* post-conviction habeas corpus petition in the state court. (ECF No. 30-36.) The state district court initially denied the petition. (ECF No. 30-38.) Wright appealed, and the Nevada Supreme Court reversed and remanded for the appointment of counsel to assist Wright in further post-conviction proceedings. (ECF No. 31-5.) Back in the state district court, Wright filed a counseled supplemental petition, and then he filed a counseled second supplemental

3

petition. (ECF Nos. 31-10, 31-20.) The state district court held an evidentiary hearing, then it denied the petition for a second time. (ECF Nos. 31-16, 31-18, 31-22, 31-23.) Wright appealed. (ECF No. 31-25.) The Nevada Supreme Court transferred the appeal to the Nevada Court of Appeals, which affirmed the denial. (ECF Nos. 31-36, 31-37.)

## II.  GOVERNING STANDARDS OF REVIEW

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be

4

more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

### III.  DISCUSSION

In Wright's sole remaining ground for relief, he alleges that he received ineffective assistance of trial counsel in violation of the Sixth Amendment when his trial counsel failed to convey a favorable plea offer from the prosecution. (ECF No. 24 at 7.)

#### A.  Background information

Wright's trial counsel testified at the post-conviction evidentiary hearing that he was appointed to represent Wright at the state justice court. (ECF No. 31-16 at 5–6.) Wright's trial counsel continued to represent Wright at the state district court in case number C271785. (*Id.* at 6.) When asked if he recalled receiving offers from the prosecution to resolve Wright's case, Wright's trial counsel testified, "I don't recall specifics, but I do recall that there was an effort to have a global negotiation." (*Id.* at 7.) Wright's trial counsel testified that there was a handwritten note in a file he kept on Wright's case, and that handwritten note "was . . . at least the details to a

potential offer." (*Id.* at 8.) The writing on the handwritten note stated the following regarding four of Wright's outstanding cases:

> Stip to revo . . . C264597 with a 12 to 32 suspended sentence. Plead to [justice court] case number 10F24130A [district court case number C271785], a robbery with use and a conspiracy to commit robbery. Plead to in [justice court] case number 10F23694A [district court case number C270723], a conspiracy to commit robbery. And then C259805 Defendant plead to grand larceny and possession of controlled substance; retain right to argue but no opposition to concurrent, but with full right to argue for consecutive time in C259805.

(*Id.* at 17.) Wright's trial counsel did not recall receiving this potential offer from the prosecution, but he testified that it was his "common practice" to talk to his clients about any guilty plea offer because it is his obligation as defense counsel that his client "receive any offer that is discussed between [him] and the DA's office." (*Id.* at 8–9, 21.)

Wright's trial counsel also testified that there was a "more formal guilty plea" offer extended by the prosecution by way of a proposed guilty plea agreement in April 2011. (*Id.* at 9.) That offer provided the following:

> Plead to a robbery in this case [case number C271785]; also agree to plead to one count of invasion of the home in case number C270723; stipulate to 4 to 10 years in . . . NDOC in cases C271785 and C270723, with those cases running concurrent; . . . the State retaining the right to argue for consecutive time between those cases in C259805.

(*Id.* at 20.) Wright's trial counsel testified that Wright "was insistent on going to trial" because "Wright was under the understanding that [Tate] was not going to testify against him." (*Id.* at 13–14, 21.) Further, it was Wright's trial counsel's belief that Duck would not be able to identify Wright as the person who robbed him because "[h]e was too fixated on the gun" at the time of the robbery. (*Id.* at 21.)

Wright testified at the post-conviction evidentiary hearing that his trial counsel did not meet with him in person or speak with him over the phone prior to the preliminary hearing or

6

between the preliminary hearing and the calendar call in April 2011. (ECF No. 31-16 at 35–36.) His trial counsel only met with him once for two minutes after the calendar call where his trial counsel gave him some discovery. (*Id.* at 36, 39.) Wright testified that his trial counsel did not relay any offers from the prosecution to him prior to the preliminary hearing or between the preliminary hearing and the calendar call. (*Id.* at 41.) Wright testified that he "was under the impression that [he] had to go to trial" because "no deal was ever offered." (*Id.* at 42.) Wright testified that he would have been receptive to an offer. (*Id.* at 42.) However, when confronted with an unsigned guilty plea agreement in another case—case number C270723—which contained a global settlement with Wright's instant case—case number C271785—in this matter, Wright testified that he looked at the agreement but "didn't thoroughly read through it." (*Id.* at 62–63.) Wright testified that he rejected that offer that encompassed both cases on April 15, 2011, based on the advice of his counsel in case number C270723. (*Id.* at 64–66.)

Wright's trial counsel in his other case—case number C270723—testified, *inter alia*, that (1) Wright "had two cases and . . . we were negotiating for a 4 to 10 stipulated sentence with concurrent time between the two cases," (2) he presented an offer to the prosecution, and the prosecutor was agreeable, (3) it was his belief that Wright was going to accept the negotiation so he told the prosecution to prepare a guilty plea agreement, (4) he discussed the details of that negotiation with Wright, (5) Wright rejected the negotiation, (6) Wright wanted a 2 to 6 years stipulated sentence, and (7) after Wright was convicted in the instant case, his case with Wright was negotiated "to get concurrent time." (ECF No. 31-18 at 5–6, 12, 20, 23.)

During the argument portion of the post-conviction evidentiary hearing, the state district court asked the prosecutor if "there was any request by any of the attorneys" for the handwritten alleged offer. (*Id.* at 31.) The prosecutor responded, "[t]hey never wanted [it] back." (*Id.*)

7

### B. Standard for ineffective-assistance-of-trial-counsel claims

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104–05. In *Richter*, the United States Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *Id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Supreme Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable.

The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

    **C.**    **State court determination**

In affirming the denial of Wright's state post-conviction petition, the Nevada Court of Appeals held:

> Wright argues the district court erred by denying his claim that counsel was ineffective for failing to convey a plea offer to him. To prove ineffective assistance of counsel, a petitioner must demonstrate counsel's performance was deficient in that it fell below an objective standard of reasonableness, and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Warden v. Lyons*, 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*). Both components of the inquiry must be shown, *Strickland*, 466 U.S. at 697, and the petitioner must demonstrate the underlying facts by a preponderance of the evidence, *Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004). We give deference to the district court's factual findings if supported by substantial evidence and not clearly erroneous but review the court's application of the law to those facts de novo. *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).
>
> Counsel has a duty to convey favorable plea offers to his client, and the failure to do so is objectively unreasonable. *Missouri v. Frye*, 566 U.S. 134, 145 (2012). To demonstrate prejudice in such a situation, a petitioner must show a reasonable probability of four things: (1) he would have accepted the earlier, uncommunicated plea offer, (2) the State would not have rescinded the offer prior to entry of the plea, (3) the trial court would not have rejected the guilty plea, and (4) "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.* at 147.
>
> After holding an evidentiary hearing, the district court found Wright failed to demonstrate there was an offer that was not conveyed or that Wright would have accepted an offer had it been conveyed. The district court found only one formal offer was made by the State and it was rejected by Wright on the record. Further, the district court found the handwritten note was not a separate formal offer from the State because it does not appear the State wrote the note, it is not dated, and critical terms of the bargain are not contained in the note. The district court also found Wright failed to demonstrate a reasonable probability he would have taken the deal because he told his counsel in this case, and separate counsel in another case, that he would not accept a global plea agreement because the victim could not identify him and he did not believe his codefendant would testify against him.
>
> Substantial evidence supports the decision of the district court. We also conclude the offer rejected by Wright on the record was substantially similar to the

> "offer" contained in the handwritten note and, therefore, Wright failed to demonstrate he would have taken the alleged earlier offer contained in the handwritten note. Accordingly, we conclude the district court did not err by denying the petition.

(ECF No. 31-37 at 2–4.)

### D.     *De novo* review is not appropriate

Wright argues that this court should review his petition *de novo* because the following factual findings by the Nevada Court of Appeals were unreasonable: (1) the handwritten note did not amount to a "separate formal offer" and (2) Wright would not have accepted the "offer." (ECF No. 53 at 9, 11.) This court disagrees. As Wright argues, the prosecutor stated at the post-conviction evidentiary hearing that neither of Wright's counsel "wanted [the handwritten note] back." (ECF No. 31-18 at 31.) Although this implies that the handwritten note was the result of at least some negotiation discussions, it does not imply that there was a formal offer, as the state district court and Nevada Court of Appeals reasonably determined. Indeed, Wright's trial counsel only recalled there being "an effort to have a global negotiation" and testified that the handwritten note discussed "a potential offer." (ECF No. 31-16 at 7–8.) Moreover, as was reasonably noted by the state district court and Nevada Court of Appeals, regarding the instant case, the handwritten note only provided that Wright would plead guilty to robbery with the use of a deadly weapon and conspiracy to commit robbery. (*See* ECF No. 31-16 at 17.) Unlike the formal settlement offer that contained a stipulated sentence of 4 to 10 years to run concurrent with Wright's other case, the handwritten note contained no stipulated sentence regarding the instant case. As such, the Nevada Court of Appeals' factual finding that substantial evidence supported the state district court's finding that the handwritten note did not amount to a "separate formal offer" was not unreasonable. And for the reasons discussed below, the Nevada Court of Appeals' factual finding that substantial

evidence supported the state district court's finding that Wright would not have accepted the handwritten note "offer" was also not unreasonable. Consequently, *de novo* review is not appropriate.

### E. Analysis

"[D]efense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). And to show prejudice "where a plea offer has lapsed or been rejected because of counsel's deficient performance," the defendant must demonstrate the following: (1) "a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel," (2) "a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it," (3) "a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.* at 147; *see also Lafler v. Cooper*, 566 U.S. 156, 168 (2012) ("If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence.").

The Nevada Court of Appeals reasonably concluded that Wright failed to demonstrate prejudice. *Strickland*, 466 U.S. at 694; *Frye*, 566 U.S. at 145; *Lafler*, 566 U.S. at 168. Contrary to

Wright's self-serving testimony[4] that he would have been receptive to an offer,[5] Wright's trial counsel testified that Wright insisted on going to trial because he believed that Tate was not going to testify against him. Further, Wright's trial counsel in his other case—case number C270723—testified that Wright rejected a formal, global settlement offer in April 2011, in part, because the terms of the agreement were not good enough. Because Wright rejected the better terms of the formal, global settlement offer—pleading guilty to only robbery in the instant case—as compared to the alleged handwritten note "offer"—pleading guilty to robbery with the use of a deadly weapon and conspiracy to commit robbery in the instant case—just a few months later, the Nevada Court of Appeals reasonably determined that Wright failed to demonstrate that he would have accepted the terms of the alleged handwritten note "offer." Accordingly, the Nevada Court of Appeals' determination constitutes an objectively reasonable application of federal law and was not based on an unreasonable determination of the facts. *Strickland*, 466 U.S. at 694; *Frye*, 566 U.S. at 145; *Lafler*, 566 U.S. at 168. Wright is not entitled to federal habeas relief.[6]

---

[4] *See, e.g., Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (rejecting a petitioner's claim, in part, because "[o]ther than [the petitioner]'s own self-serving statement, there [was] no evidence" to support his allegations); *Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002) (explaining that the petitioner's "self-serving statement, made years later," was insufficient to support the petitioner's claim).

[5] Wright argues that his resolution of the other three cases contained in the handwritten note gives support to his testimony that he would have accepted the offer in the instant case if it had been conveyed. (ECF No. 53 at 12.) This court finds this argument unpersuasive, as the circumstances of those other cases are unknown.

[6] Wright requests that this court conduct an evidentiary hearing. (ECF No. 24 at 14.) Wright fails to explain what evidence would be presented at an evidentiary hearing. Furthermore, Wright already had a thorough evidentiary hearing at the state district court on the remaining ground, and this court has already determined that Wright is not entitled to relief such that further factual development would not affect this court's reasons for denying relief. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). Thus, Wright's request for an evidentiary hearing is denied.

## IV. CERTIFICATE OF APPEALABILITY

This is a final order adverse to Wright. Rule 11 of the Rules Governing Section 2254 Cases requires this court issue or deny a certificate of appealability (COA). This court has sua sponte evaluated the remaining claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864–65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this court's procedural ruling was correct. *Id.*

Applying these standards, this court finds that a certificate of appealability is unwarranted.

## V. MOTION TO SEAL

Wright has moved for leave to file an exhibit under seal. (ECF No. 56.) Wright seeks leave to file under seal Exhibit 114, his Presentence Investigation Report ("PSI"), dated June 27, 2011. (ECF No. 55.) Under Nevada law, the PSI is "confidential and must not be made a part of any public record." NRS § 176.156(5). Having reviewed and considered the matter in accordance with *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006), and its progeny, this court finds that a compelling need to protect Wright's safety, privacy, and/or personal identifying information outweighs the public interest in open access to court records.

//

//

## VI. CONCLUSION

IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 24) is DENIED.

IT IS FURTHER ORDERED that Petitioner is denied a certificate of appealability.

IT IS FURTHER ORDERED that Petitioner's motion for leave to file exhibit under seal (ECF No. 56) is GRANTED, and Exhibit 114 (ECF No. 55) is considered properly filed under seal.

IT IS FURTHER ORDERED that the Clerk of the Court substitute Kyle Olsen for Respondent Brian Williams, enter judgment accordingly, and close this case.

Dated: August 24, 2022.

ROBERT C. JONES
UNITED STATES DISTRICT JUDGE